UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PEDERO SANDERS<br>Plaintiff | * | CIVIL ACTION<br>NO. 2:23-CV-07317 |
| VERSUS | * | SECTION: M;<br>DIVISION: 3 |
| WEEKS MARINE, INC.,<br>Defendant | * | JUDGE: ASHE |
| * * * * * * * * * * | * | MAGISTRATE:<br>DOSSIER |

Deposition of PEDERO LETRELL SANDERS, 114 Red Maple Drive, Gray, Louisiana 70359, taken in the offices of Garner & Munoz, 935 Gravier Street, Suite 1140, New Orleans, Louisiana 70112, commencing at 10:02 a.m., on Thursday, the 8th day of August, 2024.

APPEARANCES:

THE BUZBEE LAW FIRM
(By: Ryan Kennedy, Esquire)
rkennedy@txattorneys.com
600 Travis Street
Suite 7500
Houston, Texas 77002
(Attorneys for the Plaintiff)



EXHIBIT
B

JONES WALKER LLP
(By: Sara B. Kuebel, Esquire)
skuebel@joneswalker.com
201 St. Charles Avenue
51st Floor
New Orleans, Louisiana 70170
(Attorneys for the Defendant,
Weeks Marine, Inc.)

ALSO PRESENT:

Teresa Olivo

REPORTED BY:

WENDY MAJORIA, CCR
Certified Court Reporter
(No. 84106)
Magna Legal Services
866-624-6221
www.MagnaLS.com

# E X A M I N A T I O N I N D E X

PAGE

EXAMINATION BY MS. KUEBEL........................6

EXAMINATION BY MR. KENNEDY.....................111

# E X H I B I T I N D E X

Exhibit 1........................................7
(Document titled "Notice of Deposition")

Exhibit 2.......................................38
(Document titled "Application For Employment")

Exhibit 3.......................................55
(Document titled "Receipt Acknowledgment Form")

Exhibit 4.......................................56
(Document titled "Receipt Acknowledgment Form")

Exhibit 5.......................................58
(Document titled "Code of Safe Practices Acknowledgment")

EXHIBITS (continued):

PAGE

Exhibit 6........................................61
(Toolbox Talk attendance form)

Exhibit 7........................................64
(Document titled "Employee Safety and Occupational Health Indoctrination")

Exhibit 8........................................77
(Photograph identified as WEEKS 000005)

Exhibit 9........................................85
(Injury report)

S T I P U L A T I O N

It is stipulated and agreed by and between counsel for the parties hereto that the deposition of the aforementioned witness is hereby being taken under the Louisiana Code of Civil Procedure, Article 1421, et seq., for all purposes, in accordance with law;

That the formalities of reading and signing are specifically not waived;

That the formalities of filing, sealing and certification are specifically waived;

That all objections, save those as to the form of the question and the responsiveness of the answer, are hereby reserved until such time as this deposition, or any part thereof, may be used or sought to be used in evidence.

* * * *

WENDY MAJORIA, Certified Court Reporter, State of Louisiana, officiated in administering the oath to the witness.

PEDERO LETRELL SANDERS,

after having been first duly sworn by the above-mentioned Certified Court Reporter, was examined and testified as follows:

EXAMINATION BY MS. KUEBEL:

Q. Good morning. My name is Sara Kuebel. I'm an attorney representing Weeks Marine. With me here today is Teresa, who is a Corporate Claims Manager at Weeks Marine, just so you know who's in the room with me.

I know you just gave it to the court reporter, but can you please state your full name for the record again?

A. Pedero Sanders.

Q. What is your middle name?

A. Letrell.

Q. I'm Sara. You can call me Sara. You don't need to call me Ms. Kuebel or anything like that. Do you mind if I call you Pedero or would you prefer Mr. Sanders?

A. Pedero.

Q. I know you just gave it to the court reporter, but can you please state your address for the court reporter?

A. 114 Red Maple Drive, Gray, Louisiana.

A. Not the entire unemployment.
Q. Are you still a member of the union?
A. Yes, ma'am.
Q. Do you remember about when you joined the union?
A. I'm not 100 percent sure, but I want to say around '14.
Q. I want to talk about your accident, which is why we're here today. Now we're into the good stuff. Your accident happened on November 8th, 2022; is that right?
A. Yes, ma'am.
Q. You were at the fill site on land, right?
A. I was on the barge. And I walked over on land to go get the cups and come back.
Q. Your actual accident where you fell was on land, correct?
A. Yes, ma'am.
Q. Do you remember what time of day your accident happened?
A. I want to say around 2:00.
Q. I have about 2:30. Does that sound right to you?
A. Yes, ma'am.
Q. Since it happened at 2:30, let's go through

your day that day, what you had done. Your shift starts at 6:00 a.m. You get to the worksite. Take me through your day up until right before your accident.
A. I had got wet and I had to change my clothes. 'Cause some water splashed on me. I went back to the parking lot. Changed my clothes. My boots was totally wet. I thought I had an extra pair. So I ran to the store, grabbed some more. Came back.
I pretty much was working on some lead cables for an anchor. And then I wanted something to drink. We didn't have no coffee cups or any cups. So I walked over to the fill site and grabbed some.
Q. You said you walked to the fill site. Where were you before walking to the fill site?
A. We was on the barge and we pulled up over there to go grab some cups real quick.
Q. That was on one of the derrick barges?
A. Yes, ma'am.
Q. You pulled up. Where did you pull up to?
A. They had a landing.
Q. You pulled up to the landing and were walking to the fill site to get coffee cups; is that right?
A. Yes, ma'am.
Q. That day, you mentioned some water had

splashed on you. What had happened there? Were you working and just -- what happened?
A. A boat had passed by. And the wake hit the front of the barge and splashed up on me.
Q. You arrive at 6:00 a.m. for your shift; is that right?
A. We get there around 5:00, I want to say.
Q. Do y'all have a toolbox talk or a safety meeting?
A. Yes, ma'am.
Q. After that safety meeting, do you get an assignment from someone? What happens next?
A. Yes. We was working on doing some lead cables for some anchors.
Q. Where did you do that work for the lead cables or anchors?
A. We was out in an open body of water, right on side of the channel.
Q. You were on the derrick barge working on the lead cables?
A. Yes.
Q. Before you got out to the derrick barge, did someone tell you, hey, we've got to work on some lead cables today? I'm trying to figure out where you get your work assignments.

A. We get our assignments from the captains.
Q. What captain gave you that work assignment that day?
A. I don't know what captain was there that morning.
Q. What was he the captain of?
A. The dredge, the JC -- the Chatry.
Q. So the captain said, we're going to work on some lead cables. You have your morning meeting. You eventually go to the derrick barge. Does a crewboat take you out? How do you get to the barge?
A. Crewboat.
Q. Do you happen to remember the name of the crewboat?
A. No, ma'am.
Q. You get out to the derrick barge from the crewboat. You start working on lead cables. A wave passes by. You get wet. Does a crewboat take you back to shore when you were getting your boots?
A. Yes, ma'am.
Q. You're back onshore. And then did you go back out to the derrick before coming back for coffee cups?
A. Yes, ma'am.
Q. You're leaving the derrick. You said that

y'all had pulled up to a landing and you're just walking to the fill site. Tell me in your own wards what happened.
A. I walked into the supply shack. As I was coming out, a D-ring caught my left foot and caused me to trip.
Q. You were going to the supply shack to get coffee cups, right?
A. Yes, ma'am.
Q. Tell me about this supply shack. Can you describe it for me?
A. Pretty much like sea container on a skid that they can drag around.
Q. I understand that the supply shack had just been moved there. Do you know anything about that?
A. No. It wasn't just moved.
Q. When was the supply shack placed there?
A. I don't know. I just had walked over there and grabbed the cups. As I was coming out, that's when I tripped.
Q. You don't know when the supply shack was placed at that location?
A. No.
Q. You said you tripped on a D-ring?
A. D-ring.

Q. I'm going to show you -- this has already been produced as WEEKS 5. It got a little grainy.

MR. KENNEDY:

Are you marking this one?

MS. KUEBEL:

Yes. This will be Exhibit 8.

(The document is so marked as "Exhibit 8" for identification.)

EXAMINATION BY MS. KUEBEL:

Q. This is a photo that I got. Did you take this photo?

A. No.

Q. Do you happen to know who took it?

A. No.

Q. We'll figure that out.

Does this appear to you to look like the supply shack and the D-ring that you tripped on?

A. Yes, ma'am.

Q. Can you circle for me or just an arrow or something the D-ring that you tripped on?

A. (Witness complies.)

Q. Make it a little bit thicker.

A. (Witness complies.)

Q. You were walking out of the supply shack and tripped on that; is that right?

A. Yes.
Q. So when you were walking into the supply shack, did you notice that D-ring?
A. No, ma'am. The D-ring was covered up when I went over there.
Q. It was covered up when you went in?
A. Yes.
Q. How long were you in the supply shack?
A. I went in and straight back out.
Q. In the 30 seconds that you were in the supply shack, all of a sudden, it was not covered?
MR. KENNEDY:
Objection to form.
A. It was like that the entire time. This picture is not right after it happened.
EXAMINATION BY MS. KUEBEL:
Q. This D-ring that you circled, there was mud on top of it?
A. Yes, ma'am.
Q. When you tripped on it, it was covered in mud?
A. Yes, ma'am.
Q. Understood.
You couldn't see the D-ring at all; is that right?

A. Yes, ma'am.
Q. You have no idea when that supply shack was placed in that location; is that right?
A. No, ma'am.
Q. I understand that someone is typically supposed to bury those D-rings; is that right?
A. They're supposed to take them off.
Q. Whose responsibility is it to take off the D-rings?
A. Shoremen.
Q. Would the foremen of the fill placers tell shoremen to do that, generally speaking?
A. Yes, ma'am.
Q. You said you tripped on a D-ring. What hit? What caused you to trip? Does that make sense?
A. No.
Q. Did you step on it? Did your foot get clipped in it?
A. The toes of my boots or whatever. I guess, as I was stepping, maybe it cocked up out the mud and caused me to trip.
Q. When you trip, I understand that you fell, correct?
A. Yes, ma'am.
Q. Describe to me how you fell. What side did

you fall on?
A. I fell on my left side. Mainly on my left side.
Q. Was anyone else around when you fell?
A. No, ma'am.
Q. No one saw you, to your knowledge?
A. No, ma'am.
Q. You said you hit your left side. Was that on your left shoulder? Can you kind of describe how you fell?
A. I put my hands out like that and fell down to my left knee. And my right hand caused me to hurt my left knee and left shoulder and my back.
Q. You fell into this mud?
A. Yes, ma'am.
Q. So then take me through -- you walked out of the supply shack. You tripped on the D-ring that was covered in mud. What happens next? You fall. Do you get up? What happens next?
A. I got up and I called the safety man. Then I called the foreman that was on that jobsite.
Q. You got up. You said you called the safety man. Who was the safety man?
A. Jake White, I want to say. I'm not 100 percent sure.

REPORTER'S CERTIFICATE

This certification is valid only for a transcript accompanied by my original signature and original required seal on this page.

I, WENDY MAJORIA, Certified Court Reporter, in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that PEDERO LETRELL SANDERS, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinabove set forth in the foregoing 112 pages; that this testimony was reported by me in the stenotype reporting method, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board, as described on the website of the board; that I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure Article 1434 and in rules and advisory opinions of the board; that I am not related to counsel or to the parties hereto, nor am I otherwise interested in the outcome of this matter.

Wendy Majoria
- - - - - - - - - - - - - - - - - -
WENDY MAJORIA, CCR
Certified Court Reporter
(No. 84106)




WEEKS 000005