**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| PEDERO SANDERS,<br>*Plaintiff,*<br><br>v.<br><br>WEEKS MARINE COMPANY, LLC,<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:23-cv-07317<br><br><br>SECTION M (1)<br><br><br>**JURY TRIAL DEMANDED** |

*************************************

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY AND OPINIONS OF PLAINTIFF'S SAFETY EXPERT ROBERT E. BORISON**

Plaintiff respectfully submits this Memorandum in Opposition to Defendant's Motion in Limine to exclude testimony and opinions of Plaintiff's safety expert, Robert E. Borison, and respectfully requests that Defendant's Motion should be denied in its entirety.

## I. INTRODUCTION

At the time of the incident, Plaintiff was working for Defendant Weeks Marine as a Derrick Operator. Plaintiff was assigned to the Derrick Barge. This was a vessel that was in a fleet of vessels led by the Dredge JS Chatry performing dredging work in Belle Chase, LA. This dredging project, like all dredging projects, required members of this dredging crew to go on land for discrete tasks. Indeed, some of the equipment used for this dredging work was kept on land in a mobile supply shack. This piece of equipment is on skids and can be dragged from place to place. It is dragged using a system of chains and D-rings. Once put in place, at least for the duration of a job, the chains and D rings are supposed to be buried as they pose a slip, trip and fall risk. The entrance to the supply shack is supposed to be built up with sand such that crew members can have safe ingress and egress from the supply shack. The task of moving and setting up a supply shack should be accompanied by a JSA/AHA.

At some point during the work, Plaintiff went into the equipment shed and upon exiting the she tripped and fell over an unburied D-ring. Indeed, that was determined by Defendant to be the cause of the incident – an unburied D ring. Moreover, Mike Gokey, Defendant's safety officer, agreed that the job of setting up the supply shack should have a JSA/AHA. Mr. Gokey also agreed it did not. Mr. Gokey further agreed that the D rings and chains should be buried used to pull the shack should be buried after it is put in place. Mr. Gokey further agreed that Weeks' safety policy requires that all trip and fall hazards need to be remediated. And if they cannot be remediated, then they need to be marked or have a sign placed near them. Mr. Gokey agreed that the unburied chains and D-rings were recognized hazards, and yet were not buried. If such is not possible, the presence of the trip hazard should be disclosed to all parties via a JSA/AHA. Such did not happen here.

To articulate Defendant's numerous failures, Plaintiff retained Mr. Robert E. Borison to opine that Defendant failed in several material respects to provide a reasonably safe workplace for Plaintiff.[1] Defendant now moves to exclude Mr. Borison's testimony. Plaintiff respectfully submits that Defendant's motion is without merit and should be denied or ignored.

## II. ARGUMENT & AUTHORITIES

### A. Lega Standards for *Daubert Challenge* - Challenge to Plaintiff's Safety Expert

Defendant moves to exclude the testimony and opinions of Plaintiff's safety expert, Robert E. Borison, due to Borison's opinions allegedly failing to provide any scientific, technical, or other specialized knowledge that would assist the jury in understanding the evidence or making a fact determination at the trial of this matter.[2] Defendant does not challenge the expert's qualifications.

---

[1] See Exhibit A – Plaintiff's Designation of Expert Witnesses.
[2] *See* Defendant's Memorandum, p. 1.

Defendant's challenge goes to the necessity, relevance and reliability of the expert's opinions. As such, Plaintiff's response will be focused on those issues.

In 1993, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court set forth the standards by which a court must analyze the admissibility of expert testimony under Federal Rules of Evidence 702. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93, 113 S.Ct. 2786. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id*. at 593-95, 113 S.Ct. 2786. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152, 119 S.Ct. 1167. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998).

**B. Important Principles of The Rule 702 Analysis**

Opinion testimony is admissible under the Federal Rules of Evidence if: (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's

reasoning or methodology underlying the testimony is sufficiently reliable; and (3) the testimony is relevant.[6] The party offering expert testimony is not required to establish the correctness of the opinion; rather, the proponent of the opinion testimony bears the burden of establishing "by a preponderance of the evidence that the testimony is reliable."[7] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under FED. R. EVID. 702."[8]

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if ... the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue...." FED. R. EVID. 702(a). Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." United States v. Moore, 997 F.2d 55, 57 (5th cir.1993) (*quoting United States v. Webb*, 625 F.2d 709, 711 (5th Cir.1980)). An expert opinion is not helpful and is unnecessary when the trier of fact can "adeptly assess [the] situation using only [its] common experience and knowledge. *Welch v. Noble Drilling, Inc.*, No. 04–2689, 2005 WL 5950958, at *1 (E.D.La. Dec. 7, 2005) (Lemelle, J.).

**1. <u>A presumption exists in favor of admitting this evidence.</u>**

Rule 702 requires that expert testimony is relevant. *McNeese v. United States*, No. 1:17-cv-1164-KWR-KK, 2021 U.S. Dist. LEXIS 113993 (D.N.M. 2021). One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Id. (*quoting *Daubert*, 509 U.S. at 591). Relevant evidence is presumptively admissible. Fed. R. Evid. 402 ("All relevant evidence is admissible."). As the *Daubert* Court observed, "[t]he Rule's basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587. Indeed, the entire purpose of Rule 702 was to relax and liberalize the standards for admitting expert testimony.

As such, although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *McNeese v. United States*, No. 1:17-cv-1164-KWR-KK, 2021 U.S. Dist. LEXIS 113993 (D.N.M. 2021). (quoting *United States v. Dazey*, 403 F.3d 1147 (10th Cir. 2005). Such is the case in the instant matter.

**2. Jurors are still the triers of fact.**

It is also well established that the Court's gate-keeping function does not replace the adversarial system and the role of the jury within the system. *See Daubert, 509 U.S. at 596.* Although the courts have made trial judges the "gatekeepers" of the threshold admissibility of expert testimony, it is still the jury who decides the facts of a case. In fact, the Supreme Court acknowledged in *Daubert* that the more liberal standard of Rule 702 would likely allow the jury to hear more expert testimony. *Daubert*, 509 U.S. at 590. Moreover, it stated that even if this ruling would "open the floodgate" of expert testimony, juries would not be confused:

In this regard [*Daubert*] seems to us to be overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burdens of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert*, 509 U.S. at 596. *See also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (discussing *Daubert*, and noting that "while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits").

2. **The decision to admit expert testimony is decidedly within the trial court's discretion.**

The decision of whether or not to admit expert testimony is a matter committed to the sound discretion of the trial court. *Kumho*, 526 U.S. at 152. The trial court not only has considerable

discretion with respect to the ultimate reliability determination, it also has wide latitude in deciding how to determine reliability. *Kumho*, 526 U.S. at 152.

**4. <u>This Court has the discretion to decide what factors it will consider.</u>**

In *Kumho*, the Supreme Court confirmed that a trial court is not required to apply the exact factors set forth in its initial opinions regarding the methodology required for empirical scientific testimony. The Court held that the trial court has the ultimate discretion to determine what factors it will consider, depending on the type of expert and evidence at issue. *Kumho*, 526 U.S. at 152.

Thus, after the Supreme Court issued *Kumho*, the trial courts were afforded additional discretion regarding the manner in which they decide to proceed with their gate-keeping functions. Because trial courts examine all types of experts, and some expert opinions cannot be properly measured by the *Daubert* factors, the trial courts are left to their own discretion to fashion the proper method of analyzing an expert's admissibility.

**5. <u>The *Daubert* standards are not strict requirements; rather, they should be used as part of a flexible inquiry.</u>**

In *Daubert*, the Court noted that the trial court's analysis regarding the admissibility of expert testimony is a "flexible one." *Daubert*, 509 U.S. at 593-95.

**6. <u>The reliability inquiry relates only to the methodology employed, not the conclusions reached.</u>**

In *Daubert*, the Court emphasized that the trial court's analysis should focus not on the conclusions reached by the expert; but rather, on the methodology employed by the expert. *Daubert*, 509 U.S. at 594.

**C. Plaintiff Expert Robert Borison.**

**a. Mr. Borison's Opinions are Reliable and Relevant.**

Defendant states in its motion to exclude that Borison's opinions are inadmissible because they allegedly do "not provide any scientific, technical or other specialized knowledge that would assist the jury in understanding the evidence or making fact determinations at the trial of this matter."[3] These questions should be left up to the jury's discretion. *See Primrose Oper. Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 648 (S.D. Tex. 2008); *Guadalupe-Blanco River Auth. v. Kraft*, 39 S.W.3d 264, 271 (Tex. App.—Austin 2001) (holding that questions about the bases and sources of an expert's opinion generally affect the weight to be assigned to that opinion rather than its admissibility; therefore, these questions should be left for the jury's consideration) (emphasis added); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530-32 (6th Cir. 2008). Rule 704(a) allows expert opinion on an ultimate issue so long as the expert explains the basis for any summary opinion and does not simply tell the jury what result to reach. *United States v. Schneider*, 704 F.3d 1287 (10th Cir. 2013) Further, permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field. *Ritcher*, 796 F.3d at 1195. This is exactly what Plaintiff's expert, Robert Borison's testimony and opinions accomplish.

It is not within the understanding of the average man that supply shacks are needed on work sites. Or how to move a supply shack on skids. Or when to plan the placement of a supply shack on skids. Or how to configure the supply shack after it is placed, and modify it to make it safe – and when to make it safe. Such is specialized knowledge in the offshore industry. It does not reside within the average juror – even those in areas with offshore work. Moreover, there are

---

[3] *See* Defendant's Memorandum, p. 1.

safety issues at play that are not know by the average juror – such as the use of a JSA/AHA. And the purpose of a JSA/AHA, and how it could have prevented the incident in question. Finally, Mr. Borison will testify to the safety regulations and safety principles in the offshore industry that apply to the incident in question. Point is, Mr. Borison is a safety professional that has specialized knowledge that directly impacts the facts in this case. His specialized knowledge will assist the tried of fact in understanding a set of facts they are not familiar with – including regulations, safety principles, and the standard of care in the offshore industry.

Additionally, Mr. Borison's opinions are based on generally accepted methodology and factual, reliable data, in conjunction with his experience, education, and extensive training. Additionally, Mr. Borison uses the same methodology used in the maritime industry to determine the safety standards. Many times, this is referred to as an investigation policy or incident reporting and investigation policy. The methods are simple, yet reliable. The investigator starts with gathering the facts. Here, that included reviewing paper discovery and other relevant documentation. Next was an analysis of what happened and why it happened. Such is a method known as a 'failure tree' or an analysis of why something happened until you get to the 'root' of the tree. Such is exactly what Mr. Borison provided in his expert report. This is the same methodology that Defendant uses to investigate incidents.

Mr. Borison's opinions on the Defendant's failure provide a safe workplace, adequate equipment, and adequate safety protocols and practices, among other failures, are highly relevant to this matter; this, coupled with Mr. Borison's extensive expertise, as outlined within his curriculum vitae, render them strongly reliable.[4]

**b. Mr. Borison's Opinions are not simply fault based conclusions**

---

[4] *See* exhibit A to Defendant's Memorandum, p. 6.

Contrary to Defendant's argument, Mr. Borison is not simply providing fault-based conclusions. Further, even if Mr. Borison's opinions relates to legal issues such as fault such does not bar Mr. Borison's opinions. As explained by the Western District of Louisiana in *Woodard v. Andrus*, "testimony should not be excluded simply because a witness is trained in the law or because the testimony will touch on legal topics. In distinguishing admissible testimony from inadmissible testimony, the task for the Court is to ask whether the expert's opinions bear on some factual inquiry or whether they bear solely on the legal conclusions that are urged. In other words, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Woodward v. Andrus*, 419 F.3d 348 (5th Cir. 2005). Mr. Borison will not testify as to what a legal standard is or whether it has been satisfied. Mr. Borison's testimony relates to Weeks' failure to follow safety policy, hazard assessment, safety regulations, and cure known hazards. This is the factual inquiry before the Court. And the information upon which Mr. Borison will opine. Mr. Borison does not simply state that Weeks Marine is at fault, but provides an analysis as to how Weeks failed to provide a safe work place.

## III. <u>CONCLUSION AND PRAYER</u>

The "rejection of expert testimony is the exception rather than the rule." See Fed. R. Evid. 702, Adv. Comm. Notes (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain the "appropriate means of attacking" most expert opinions. *Daubert*, 509 U.S. at 596. Here, the bulk of the Defendant's arguments go to the weight and relevance of the evidence, and can be addressed through vigorous cross-examination and the presentation of contrary evidence. For these reasons, Plaintiff respectfully requests this Court to deny Defendant's Motion and should allow Robert Borison to testify at trial as an expert

witness in this case, as he is exponentially qualified as a safety expert, his opinions are based on reliable and factual data, and his testimony will aid the jury in their findings. Plaintiff further requests any and all other relief that he may be justly entitled to.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: *<u>/s/ Anthony G. Buzbee</u>*
Anthony G. Buzbee
State Bar No. 24001820
Christopher J. Leavitt
State Bar No. 24053318
JPMorgan Chase Tower
600 Travis Street, Suite 7500
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909
www.txattorneys.com
tbuzbee@txattorneys.com
cleavitt@txattorneys.com

**GARNER & MUNOZ**

*/s/ John G. Munoz*
Louisiana Bar No. 9830
935 Gravier Street, Suite 1140
New Orleans, Louisiana 70112-2411
Phone: 504-581-7070
Facsimile: 504-581-7083
Email: jgm@g-mlaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document has been duly served on all known counsel of record and pro se parties in accordance with the Federal Rules of Civil Procedure, on September 18, 2024.

*/s/ Christopher J. Leavitt*
Christopher J. Leavitt